**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | **No. 03-20127-KHV** |
| | ) | |
| **DANIEL MONTGOMERY,** | ) | **CIVIL ACTION** |
| | ) | **No. 08-2318** |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate,</u>

<u>Set Aside, or Correct Sentence By A Person In Federal Custody</u> ("<u>Section 2255 Motion</u>")

(Doc. #111) filed July 10, 2008 and <u>Petitioner's Motion For Leave To Amend Original Section 2255</u>

<u>Pleading</u> ("<u>Motion To Amend</u>") (Doc. #120) filed November 18, 2008.[1] Defendant seeks relief under

28 U.S.C. § 2255, claiming that counsel was ineffective in not seeking a new trial and not allowing

defendant to testify at trial.  Defendant also claims that the government violated his constitutional

rights by destroying crucial evidence.  For reasons stated below, the Court overrules defendant's

Section 2255 motion regarding counsel's failure to seek a new trial and will hold an evidentiary

hearing regarding his other claims.

---

[1]         As a preliminary matter, the Court sustains defendant's motion for leave to amend his pleading.  Defendant seeks leave to add a claim that counsel was ineffective in not advising him what to do if he wished to testify against the advice of counsel.  <u>See</u> <u>Motion To Amend</u> (Doc. #120) at 1. Defendant apparently wants to add this claim in response to the government's argument that defendant waived any claim related to not testifying because he did not bring the matter to the Court's attention at trial.  As discussed below, the government's argument does not preclude defendant's claim.  Nevertheless, because defendant's motion is timely and relates to his original claims, the Court will allow the amendment.  <u>See, e.g.</u>, <u>United States v. Wheeler</u>, No. 99-40094-JAR, 2007 WL 1725257, at *3 (D. Kan. June 11, 2007).

I.      **Factual And Procedural Background**

On September 18, 2003, the grand jury issued an indictment which charged that on or about May 5, 2008, defendant knowingly and intentionally possessed with intent to distribute 100 or more marijuana plants, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.  See Doc. #1.  On January 19, after a two-day trial, the jury found defendant guilty as charged.  See Docs. #44 and #47.

A.      **Evidence At Trial**

Brent Coup, special agent with the DEA, testified as follows:  On May 5, 2003, Coup headed a group of law enforcement officers in executing a search warrant on defendant's residence at 1616 South 15th Street in Kansas City, Kansas.  Jury Trial – Testimony of Brent Coup (Doc. #69) filed December 12, 2005 at 2, 14, 20-21, 60.  As case agent, Coup was in charge of the operation after the site was secure.  Id. at 21.  In this capacity, he supervised suspect interviews and evidence collection.  Id.  As they approached the house, officers smelled live marijuana.  Id. at 23.  Inside the house, they found a large marijuana grow in a back room with indoor lighting and air circulation, buckets, liquid containers, soil, pesticides, fungicides, fertilizers and a self-contained watering system.  Id. at 25-36, 43, 49.

Agents also found a small grow room with clones and mother plants.  Id. at 25, 45.  Marijuana growers typically select a good marijuana plant to keep as a mother plant and cut clones off that plant to keep getting the same strain of marijuana.  Id. at 46.  To clone a plant, one clips off a portion of a mother plant, places the stem in a special solution which encourages root growth and puts it in a so-called grow block, or a highly fertilized piece of soil.  Id. at 37.

Agents dismantled the grow room and took the marijuana plants outside and laid them on

2

sheets.  Id. at 53-54.  Agents included only those plants which had root systems, stems and leaves. Id. at 50, 55.  Coup and another officer counted the plants and twice found 101 plants with roots, stems and leaves.  Id. at 55.  They videotaped and photographed the plants, kept samples from ten plants and disposed of the remaining plants.  Id. at 56.  The video and photographs do not reveal the number of plants.  Id. at 85-86.

A marijuana cigarette typically contains about .6 grams of marijuana.  Id. at 64.  An average marijuana plant yields about one pound – or approximately 454 grams – of marijuana.  Id. at 65.  An average person's marijuana high lasts a couple of hours.  If a person were awake for 24 hours, he could smoke 12 marijuana cigarettes.  Id. at 65.  It would take more than 17 years for one person to smoke the marijuana produced by 100 marijuana plants.  Id. at 65-66.  A person would not keep 100 marijuana plants for personal use.  Marijuana is perishable and one could not keep such a large quantity in good condition long enough for one person to smoke.  Id. at 66.

Jose L. Carillo, detective with the City of Overland Park, Kansas, testified as follows:  The United States Drug Enforcement Agency ("DEA") assigned Carillo to work as a task force officer in its Kansas City district office.  See Jury Trial Transcript (Doc. #71-2) filed December 12, 2005 at 127.  As task force officer, Carillo worked mainly on narcotics cases.  See id.  Carillo also served as interpreter and photographer.  See id.

On May 5, 2003, Carillo assisted with executing the search warrant at defendant's residence. See id.  Coup assigned Carillo to photograph evidence and act as property officer, i.e. to recover items inside the house and process them as evidence in the case.  See id. at 128, 132.  As Carillo

3

approached the house, he noticed the smell of fresh marijuana.[2]  See id. at 130.  Carillo took photographs of the exterior and interior of the house.  See id. at 132-35.  Inside the residence, officers found a large marijuana grow in the back room and mother plants and clones in a smaller room.  See id. at 133-34.  Carillo photographed the plants as they were growing in pots and after officers had pulled them and exposed their roots.  See id. at 135-36.  Carillo also photographed the plants laying outdoors, after officers had removed them from the residence.  See id. at 136-37.[3]

Carillo assisted Coup in taking a random sample from every ten plants.  See id. at 148-50. Carillo counted the plants and included only plants which contained a stem, leaves and root system. See id. at 150-53.  Because he collected ten samples, Carillo knows that he counted at least 100 full marijuana plaints.  See Jury Trial Transcript (Doc. #71-2) at 155.  On cross examination, however, Coup testified that if he had counted 99 plants, he would have taken ten samples as well.  See Jury Trial – Testimony of Brent Coup (Doc. #69) at 94.

Michael Scalise, special agent with the DEA, testified as follows:  On May 5, 2003, Scalise assisted in executing the search warrant at defendant's residence.  See id. at 168.  Scalise was in charge of videotaping the marijuana grow.  See id.[4]  The video depicts plants growing in pots and plants which officers had pulled out of the pots.  See id. at 171.  In the video, some labels appear which state as follows:  "TFO Carillo ___ plants."  See id. at 171-72.  The blanks were created to

---

[2]  Carillo had worked for five years as a forensic chemist in the drug identification lab of the Police Department in Kansas City, Missouri.  See id.  In that position, he became abundantly familiar with marijuana.  See id. at 130-31.

[3]  The Court admitted Carillo's photographs into evidence.  See id. at 131-48.

[4]  The Court admitted a copy of the video into evidence.  See id. at 169-71.

indicate the number of plants, but nobody filled them in.[5]  See id. at 172.  Scalise was not in charge of documenting the number of plants.

Laren Miles Culver, defendant's landlord and roommate, testified as follows:  Culver rented the property at 1616 South 15th Street and subleased space to defendant.  Jury Trial Transcript (Doc. #71-2) at 173-74.  Culver did not have a formal rental agreement with defendant.  See id. at 174.  Defendant paid $100 a week to live in the house and also helped with utilities and food.  See id. at 179-80, 190.  Culver and defendant shared the kitchen and bathroom.  See id. at 174.  Defendant occupied a bedroom in the house and had access to the back room which contained the marijuana grow.  See id. at 174-75.  Culver understood that the marijuana grow was defendant's area and he tried to stay out of it.  See id. at 177.

Culver smoked marijuana which defendant grew, sometimes sporadically and sometimes on a daily basis.  See id. at 178-79.  At times, Culver smoked marijuana with defendant four to six times a day.  See id. at 184.  Culver did not pay for the marijuana which he smoked.  See id. at 179.  The marijuana which defendant grew was of very good quality, with extremely high potency.  See id. at 179, 188.  Defendant and Culver had friends who came to the house and smoked marijuana which defendant grew.  See id. at 180-81.  Defendant smoked marijuana up to eight to ten times a day.  See id. at 193.  It relieved pain of various physical ailments which defendant and Culver suffered.  See id. at 191.

Lucretia Weber, forensic chemist with the DEA, testified that she tested the ten samples which Carillo collected and concluded that they were marijuana.  See id. at 196-204.

**B.      Jury Instructions**

_____

[5]       The record is unclear regarding whether Scalise knew who created the labels.

5

The Court instructed the jury as follows:

> In order to prove that defendant is guilty of the crime charged in the indictment, the government must prove beyond a reasonable doubt the following three essential elements:
>
> > FIRST: On or about May 5, 2003, in the District of Kansas, defendant possessed 100 or more marijuana plants, a controlled substance;
> > SECOND: Defendant knew that the substance was marijuana, a controlled substance; and
> > THIRD: Defendant intended to distribute the controlled substance.
>
> * * *

Instruction No. 15, <u>Instructions To The Jury</u> (Doc. #45) filed January 19, 2005.  The Court defined "to distribute" to mean "to deliver or to transfer possession or control of something from one person to another."  Instruction No. 16 (Doc. #45).

### C.     Post Trial Proceedings

On February 2, 2005, defendant filed a motion for judgment of acquittal, arguing that the evidence was insufficient to support the jury finding regarding the number of marijuana plants.  <u>See</u> Doc. #49.  On March 21, 2005, the Court entered an order which observed that the evidence at trial might be insufficient to support the conviction.  <u>See</u> Doc. #51 at 6.  Specifically, the Court noted that defendant kept two mother plants for cloning (from which he did not harvest marijuana to distribute), and that defendant arguably did not intend to distribute marijuana from all 101 plants.  <u>See</u> <u>id.</u> at 5-6.  In addition, the Court observed that it should have instructed the jury that it must find that defendant intended to distribute marijuana from 100 or more plants and that it could not consider plants which defendant held for purposes other than distribution, <u>i.e.</u> for cloning or for personal consumption.  <u>See</u> <u>id.</u> at 6.  The Court ordered the parties to show cause why it should not grant a new trial or,

alternatively, enter a judgment of acquittal.  See id. at 6-7.[6]

On June 9, 2005, after considering the parties' responses to the show cause order, the Court sustained defendant's motion for acquittal.  See Memorandum And Order (Doc. #61).  The Court found that construed in a light most favorable to the government, the evidence at trial established that defendant possessed 101 plants, that he kept at least two of them – the mother plants – in a separate room for purposes of cloning, and that no evidence suggested that he intended to harvest or distribute marijuana from any part of the mother plants.  See id. at 6.[7]  The Court concluded that the evidence was insufficient to support a finding that defendant possessed the mother plants with intent to distribute marijuana from them and that at most, defendant possessed 99 marijuana plants with intent to distribute.  See id.  Alternatively, the Court found that defendant was entitled to a new trial because (1) the jury instructions did not require the jury to find that defendant intended to distribute from 100 or more plants and (2) the Court should have instructed the jury that it could not consider plants which defendant held for purposes other than distribution, i.e. for cloning or solely for personal consumption.  See id. at 6-7.  On June 9, 2005, the Court entered judgment of acquittal.  See Doc. #62.

On appeal, the Tenth Circuit reversed.  See United States v. Montgomery, 468 F.3d 715 (2006).  The Tenth Circuit found that in determining quantity under Section 841(a)(1), the jury could

---

[6]  Defendant did not request a new trial in his motion for judgment of acquittal or otherwise.  See Doc. #49.
Defendant contends that in its show cause order of March 21, 2005, the Court "invited" counsel to file a motion for new trial.  See Defendant's Memorandum attached to Section 2255 Motion (Doc. #111) at 14.  The Court disagrees.  The Court ordered the parties to show cause why it should not order a new trial - it did not invite counsel to file a motion for new trial.  See Doc. #51 at 6-7.

[7]  The evidence established that to successfully clone marijuana plants, one must keep the mother plants from forming buds, i.e. the part of the plant which is good to smoke.  See id.

properly consider the mother plants if they contributed to the predicate offense.  See id. at 720.  The

Tenth Circuit found that the evidence supported a reasonable inference that some of the 99 non-

mother plants were clones from the mother plants, and that the mother plants contributed to

defendant's distribution enterprise.  See id. at 721.  The Tenth Circuit decided that the jury could

rightfully include the mother plants in the total count and conclude that defendant possessed 101

marijuana plants with intent to distribute.  See id.  The Tenth Circuit noted that its holding rejected

this Court's premise for granting a new trial.  See id.  In addition, the Tenth Circuit found that

because defendant did not file a motion for a new trial, the district court lacked jurisdiction to grant

one.  See id. at 721-22.

On March 1, 2007, the Court sentenced defendant to 120 months in prison and eight years on

supervised release.  See Doc. #85.  Defendant appealed, arguing that (1) the search warrant and

affidavit in support thereof lacked probable cause in violation of the Fourth Amendment; (2) the

Court erred by not giving the jury a special verdict form which would allow it to find that defendant

distributed a small amount of marijuana without remuneration; and (3) the prosecutor undermined

the fairness and integrity of the trial by denigrating defense counsel during her examination of

witnesses and in closing argument.  See United States v. Montgomery, 262 Fed. Appx. 80, 2008 WL

110999, at **2 (10th Cir. Jan. 10, 2008).  The Tenth Circuit affirmed, finding that (1) probable cause

supported the affidavit and warrant; (2) defendant waived any objection to the verdict form; and (3)

the prosecutor's comments did not violate defendant's substantial rights.  See id. at **3-6. Defendant

did not petition the Supreme Court for certiorari review.

8

On July 10, 2008, defendant timely filed his Section 2255 petition.[8]

## II.      Legal Standards

Section 2255 authorizes the Court to enter relief if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  18 U.S.C. § 2255(b).  The standard of review under Section 2255 is quite stringent.  The Court presumes that the proceedings which led to defendant's conviction were correct.  See Klein v. United States, 880 F.2d 250, 253 (10th Cir.1989).  To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice."  Davis v. United States, 417 U.S. 333, 346 (1974).  In his Section 2255 motion, defendant must specify all grounds for relief, state the facts supporting each

---

[8]        Section 2255 provides a one-year time limitation for motions brought under that section.  The limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Because defendant filed a direct appeal, his conviction became final on April 30, 2008 (90 days after the Tenth Circuit issued its mandate affirming the conviction).  See Clay v. United States, 537 U.S. 522, 532 (2003) (if defendant does not file petition for certiorari review, Section 2255 time limitation starts to run when time for seeking such review expires); 28 U.S.C. § 2101(c) (providing 90 days to file writ of certiorari).  Defendant filed his petition on July 10, 2008, well within the one year time limit.

ground and sign under penalty of perjury.  See Rules 2(b)(1), (2) and (5), Fed. R. § 2255 Proc.[9]  A

hearing under Section 2255 is not required unless (1) defendant alleges specific and particularized

facts which, if true, would entitle him to relief and (2) the motion and the files and records of the

case do not conclusively show that defendant is entitled to no relief.  See 28 U.S.C. § 2255(b);

United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless

"petitioner's allegations, if proved, would entitle him to relief" and allegations not contravened by

record).

Section 2255 is not available to test the legality of matters which should have been raised on

appeal.  See United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994) (citing United States v.

Walling, 982 F.2d 447, 448 (10th Cir. 1992)).  In a Section 2255 petition, defendant is precluded

from raising issues which he did not raise on direct appeal unless he can show cause for his

procedural default and actual prejudice resulting from the alleged errors, or that a fundamental

miscarriage of justice will occur if the Court does not address his claim.  See Allen, 16 F.3d at 378.

Defendant may establish cause for procedural default by showing that he received ineffective

assistance of counsel in violation of the Sixth Amendment.  See Murray v. Carrier, 477 U.S. 478,

488 (1986); United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).

---

[9]     Defendant signed his Section 2255 motion under penalty of perjury.  See Section
2255 Motion (Doc. #111) at 14.  He attaches to the Section 2255 motion a memorandum in support
which he did not sign under penalty of perjury.  See Memorandum Of Law In Support Of Grounds
Raised In Movant's Motion Under Title 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence
("Defendant's Memorandum") at 44, attached to Section 2255 Motion (Doc. #111).  In support of
the memorandum, defendant submits a declaration of facts which he signed under penalty of perjury.
See Exhibit 1 to Defendant's Memorandum.  In addition, defendant's Section 2255 motion (which
he signed under penalty of perjury) cites the memorandum in support to explain the grounds for his
requested relief.  See Section 2255 Motion (Doc. #111) at 5, 6, 8.  Under these circumstances,
defendant has substantially complied with the requirements of Rule 2(b).  See, e.g., United States v.
Guerrero, 488 F.3d 1313, 1316 (10th Cir. 2007).

### III.   Analysis

Defendant seeks relief under Section 2255 on grounds that trial counsel was ineffective in not seeking a new trial and not allowing defendant to testify at trial.  Defendant also claims that by destroying crucial evidence, the government violated his constitutional rights under the Fifth and Sixth Amendments.

### A.   Ineffective Trial Counsel

Defendant asserts that trial counsel was ineffective in (1) not moving for a new trial; and (2) not allowing defendant to testify at trial.[10]  Defendant did not raise these claims on direct appeal. The failure to raise ineffective assistance of counsel claims on appeal, however, does not preclude him from asserting them in this proceeding.  See Massaro v. United States, 538 U.S. 500, 504 (2003); United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

To establish ineffective assistance of counsel, defendant must show that (1) counsel's performance was deficient and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To meet the first element, i.e. deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  In other words, defendant must prove that counsel's performance fell "below an objective standard of reasonableness."  Walling, 982 F.2d at 449.  The Supreme Court recognizes "a strong presumption that counsel's conduct falls within the

---

[10]    In the caption of his argument, defendant asserts that counsel was ineffective in not calling an expert witness to rebut the government's estimates regarding quantity of marijuana plants. See Defendant's Memorandum at 25.  Defendant, however, presents no facts or legal argument in this regard.  On this record, defendant has not alleged specific and particularized facts which show that counsel was ineffective in not calling an expert witness.

wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).  To satisfy the second prong of Strickland, defendant must show a reasonable probability that but for counsel's errors, the jury would have reached a different verdict.  A reasonable probability is one sufficient to undermine one's confidence in the outcome.  See Strickland, 466 U.S. at 694.  To determine whether counsel's errors prejudiced defendant, the Court considers the totality of the evidence before the jury.  See Strickland, 466 U.S. at 695.  As to the second element, the Court looks to whether counsel's deficient performance rendered the result of the trial unreliable or the proceedings fundamentally unfair.  See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).[11]

### 1.  Failure To Move For New Trial

Defendant contends that counsel should have moved for a new trial because (1) defendant knew that he had less than 100 marijuana plants and government agents mistakenly or intentionally lied about the number of plants which they found; and (2) government agents wrongly testified regarding drug calculations related to defendant's personal consumption.  See Memorandum Of Law In Support Of Grounds Raised In Movant's Motion Under Title 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence ("Defendant's Memorandum") attached to Section 2255 Motion (Doc. #111) at 13, 21-22.[12]  Defendant asserts that counsel agreed to file a motion for new trial on

---

[11]     Defendant presents evidence that on September 27, 2007, the State of Kansas disbarred his trial counsel based on conduct in other cases.  See Defendant's Memorandum at 23-25. Such evidence does not itself establish that counsel was ineffective in this case.  See, e.g., Ives v. Boone, No. 02-6397, 101 Fed. Appx. 274, 295 (10th Cir. June 7, 2004);

[12]     Defendant also contends that counsel should have moved for a new trial because the government destroyed the marijuana plants without keeping a visual means to ascertain the number of plants and without letting defendant or his legal representative verify the number of plants.  See (continued...)

these grounds but did not do so.  See id. at 13-14.  Defendant contends that by not moving for a new trial, counsel was ineffective.  After trial, counsel filed a motion for judgment of acquittal but did not request a new trial.  See Doc. #49.  For purposes of ruling on defendant's motion, the Court assumes without deciding that counsel's performance in this regard fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at 697 (court need not address both prongs if petitioner fails to make sufficient showing on one).  Even so, defendant has not satisfied the second prong of Strickland, i.e. a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.  See Strickland, 466 U.S. at 687.[13]

Defendant asserts that counsel should have moved for a new trial because defendant knew that he had less than 100 marijuana plants and government agents mistakenly or intentionally lied about the number of plants which they found.  Defendant cannot show a reasonable probability that the Court would have granted such a motion.  Under Rule 33, Fed. R. Crim. P., the Court may grant a motion for new trial "if required in the interest of justice."  The Court exercises discretion in deciding whether to grant a motion for new trial.  See United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998).  The Court does not regard with favor a Rule 33 motion and will grant a new trial only with great caution.  See id.  At trial, defendant presented no evidence regarding the number of plants.  His proposed motion for new trial apparently would contain only his bare assertion that he had less than 100 plants and that government agents misrepresented the number of plants which they

---

[12](...continued)
Defendant's Memorandum at 21.  This argument relates to whether counsel should have objected to the government's destruction of evidence, which the Court addresses below.

[13]     The Court rejects defendant's argument that the second prong of Strickland does not apply in this case.  See Defendant's Memorandum at 20.

found.  Under these circumstances, the Court would not have found that the interest of justice required a new trial.  Accordingly, defendant cannot show that he was prejudiced by counsel's failure to request a new trial on these grounds.

Defendant contends that counsel should have moved for a new trial because Coup grossly overstated facts related to drug calculations and the amount of marijuana which defendant could personally consume.  See id. at 21-22.  These arguments apparently go to defendant's theory that the jury should have subtracted from the total number of plants the amount of marijuana which he personally consume.[14]  Both the Tenth Circuit and this Court have rejected this argument.  In originally granting acquittal, this Court concluded that because a marijuana plant could provide a continuous supply of marijuana, the jury should count the entire plant if defendant planned to distribute some portion of it, even though defendant intended to personally consume some portion of it.  See Memorandum And Order (Doc. #61) at 4-5.  On appeal, the Tenth Circuit agreed with the Court in this regard.  See Montgomery, 468 F.3d at 720.  The evidence at trial did not suggest – and defendant does not now assert – that he segregated specific plants solely for personal consumption.  On this record, defendant cannot show a reasonable probability that the Court would have granted a new trial on grounds that Coup misstated facts relating to drug calculations and the amount of marijuana which defendant could personally consume.  Defendant is not entitled to relief based on counsel's failure to move for a new trial.

### 2.    Not Allowing Defendant To Testify At Trial

Defendant asserts that counsel was ineffective because he threatened to resign if

---

[14]    Defendant contends that because he smoked the equivalent of five marijuana plants during the time it took for a cloned stem to become a mature marijuana plant, five marijuana plants (out of 101) were not available for distribution and should not be counted.  See id. at 34-36.

defendant exercised his right to testify at trial.  A criminal defendant has a constitutional right to testify at trial on his own behalf.  See Rock v. Arkansas, 483 U.S. 44, 49-52 (1987).  The decision to testify lies squarely with defendant and not counsel.  See Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).  Counsel should inform defendant that he has the right to testify and that the decision belongs solely to him.  See Cannon, 383 F.3d at 1171 (citing United States v. Teague, 953 F.2d 1525, 1533-34 (11th Cir. 1992)). Counsel should also discuss the strategic implications of choosing whether to testify and make a recommendation to defendant.  See id.  Counsel lacks authority to prevent defendant from testifying, even if it would be suicidal trial strategy to do so.  See Cannon, 383 F.3d at 1171 (citing United States v. Janoe, 720 F.2d 1156, 1161 & n.10 (10th Cir. 1983)).

The government argues that defendant waived claims regarding his right to testify because during trial, he did not inform the Court that he wanted to testify.  See Government's Response To Defendant's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255 ("Government's Response") (Doc. #113) filed August 29, 2008 (citing United States v. Williams, No. 04-6121, 139 Fed. App'x 974, 977 (10th Cir. July 18, 2005) and United States v. Webber, 208 F.3d 545 (6th Cir. 2000)).  The cases which it cites, however, do not support such conclusion in context of an ineffective assistance claim.  In Williams, the Tenth Circuit stated that to ensure his constitutional rights, a defendant must alert the trial court that he wants to testify. 139 Fed. App'x at 976.  In the same case, the Tenth Circuit found that if trial counsel prevented defendant from testifying against his wishes, such conduct would fall below an objective standard of reasonableness and satisfy the first prong of Strickland.  See id. at 977.  In Webber, the Sixth Circuit addressed a trial court's duty to sua sponte inquire into a defendant's decision not to testify.  See id. at 551-52.

Webber involved a direct appeal of defendant's conviction; defendant did not assert ineffective assistance of counsel. See id.

Defendant states that (1) before the government rested its case, defendant told counsel that he wanted to testify on his own behalf; (2) counsel replied that he was running things and if defendant insisted on testifying, he would withdraw from the case; and (3) defendant did not press the matter because he was afraid to lose counsel at such a critical stage in the case. See Declaration ¶¶ 12-14, Exhibit 1 to Defendant's Memorandum (Doc. #111). If defendant's declaration is true, counsel deprived him of the constitutional right to testify. See Cannon, 383 F.3d at 1171; Williams, 139 Fed. App'x at 977; Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992). Such a dereliction of duty would satisfy the first prong of Strickland. See Cannon, 383 F.3d at 1171; Williams, 139 Fed. App'x at 977; Nichols, 953 F.2d at 1553. To satisfy the second prong, defendant must show a reasonable probability that his testimony would have raised in a juror's mind a reasonable doubt regarding his guilt. See Cannon, 383 F.3d at 1171 (citing Strickland, 466 U.S. at 694-95). A reasonable probability is one sufficient to undermine one's confidence in the outcome. See Strickland, 466 U.S. at 694. To determine whether counsel's errors prejudiced defendant, the Court considers the totality of the evidence before the jury. See Strickland, 466 U.S. at 695. In other words, the Court examines the "breadth of evidence" and determines whether a reasonable probability exists that the case would have come out differently if defendant had testified. Coss v. Lackawanna County Dist. Atty., 204 F.3d 453, 462 (3d Cir. 2000) (quoting United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997)), rev'd on other grounds, 532 U.S. 923 (2001).

Defendant contends that if counsel had allowed him to testify at trial, he would have stated as follows: He owned the marijuana plants, he grew them for distribution purposes and he was

aware of the total number of plants which he possessed.  Defendant's Memorandum at 28.  On May

5, 2003, he possessed 91 whole marijuana plants (including the mother plants) and eight

cuttings/clones, for a total of 99 plants.  Id.  He had less than 100 marijuana plants.  Id.  Each plant

grew to 12 to 18 inches tall and produced 28 to 42 grams of marijuana.  Id.  Defendant smoked 12

to 15 marijuana cigarettes a day.  Id.  Each cigarette contained .6 to .8 grams of marijuana.  Id.  It

took at least 14 weeks for a marijuana plant to reach maturity.  Id.  Coup's testimony was

intentionally false and misleading and the government attorney knew this fact and did not correct

it.  Id.  Defendant would have asked to use the ten specimen samples to demonstrate the size and

weight of the marijuana plants.  Id.

Defendant contends that his testimony regarding personal consumption and drug calculations

would establish that even if he possessed 101 plants, he did not possess 100 or more plants with

intent to distribute because the jury should have subtracted from the total number of plants the

equivalent of five plants which he personally consumed.  See Defendant's Memorandum at 30-36.

To satisfy the second prong of Strickland, defendant must show a reasonable probability that but for

counsel's errors, the jury would have reached a different verdict.  As discussed, both the Tenth

Circuit and this Court have found that because a marijuana plant can provide a continuous supply

of marijuana, the jury should count the entire plant if defendant planned to distribute some portion

of it, even though defendant intended to personally consume some portion of the plant.  See

Montgomery, 468 F.3d at 720; Memorandum And Order (Doc. #61) at 4-5.  The evidence at trial did

not suggest – and defendant does not now assert – that he segregated specific plants solely for

personal consumption.  On this record, defendant cannot show a reasonable probability that the

outcome would have been different had he testified regarding his personal consumption and drug

calculations.

Defendant asserts that his testimony would establish that he possessed 91 whole marijuana plants (including the mother plants) and eight cuttings/clones, for a total of 99 plants.  To satisfy the second prong of Strickland, defendant must show a reasonable probability that but for counsel's errors, the jury would have reached a different verdict.  Defendant asserts that he went to trial only to dispute the number of plants which he possessed.  See Declaration ¶ 17.  Indeed, the number of marijuana plants was critical to the outcome of case.  To convict defendant, the jury had to find beyond a reasonable doubt that he possessed 100 or more marijuana plants.  To the extent defendant was in the process of cloning marijuana plants, the jury could include in its count only those cuttings which had a readily observable root formation.  See, e.g., United States v. Foree, 43 F.3d 1572, 1581 (11th Cir.1995); United States v. Robinson, 35 F.3d 442, 446 (9th Cir. 1994).[15]

At trial, two government agents testified that they counted 101 marijuana plants with roots, leaves and stems.  The government presented no other evidence regarding the number of plants.  If defendant had testified that he had only 99 plants, the trial outcome would have depended solely on the jury's credibility assessment of defendant versus the two government agents.  Where evidence of guilt is overwhelming or where defendant's proposed testimony contradicts other statements by defendant and/or otherwise appears incredible, some courts have found no need for an evidentiary hearing regarding the prejudicial effect of defendant not testifying.  See, e.g., Franklin v. United States, 227 Fed. Appx. 856, 2007 WL 1600028, at *5 (11th Cir. June 5, 2007) (no need for evidentiary hearing when evidence of guilt overwhelming); United States v. Araujo, 77 Fed. Appx.

---

[15]   Applicable statutes do not define the term "marijuana plant."  With regard to sentencing, the United States Sentencing Guidelines state that a plant is "an organism having leaves and a readily observable root formation."  U.S.S.G. § 2D1.1 cmt. n. 17.

18

276, 2003 WL 22316865, at *2 (5th Cir. Oct. 9, 2003) (affirming no prejudice finding without evidentiary hearing where defendant's proposed testimony contradicted his post-arrest statements and appeared incredible).  Here, evidence of defendant's guilt is not overwhelming and the record does not contain inconsistent statements by defendant.  This is a close case in that government agents claim that they found 101 plants – only one plant more than the 100 minimum necessary for a conviction.  On this record, that Court cannot conclude as a matter of law that defendant was not prejudiced by counsel's alleged refusal to let him testify.  See, e.g., See Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970) (court can rarely resolve credibility issue on basis of affidavits alone). Accordingly, the Court will hold an evidentiary hearing to determine (1) whether counsel prevented defendant from testifying and (2) whether a reasonable probability exists that the jury would have reached a different verdict if defendant had testified regarding the number of marijuana plants.  See, e.g., Cannon, 383 F.3d at 1172; see also United States v. Johnson, 995 F. Supp. 1259, 1265 (D. Kan. 1998).

Under Rule 8(c), Fed. R. § 2255 Proc., if defendant qualifies to have counsel appointed under 18 U.S.C. § 3006A, the Court must appoint counsel to represent him at the evidentiary hearing.[16] The Tenth Circuit found that defendant qualified for appointment of counsel under 18 U.S.C. § 3006A(g) and the government does not suggest that his financial circumstances have changed.  The Tenth Circuit's determination that defendant is financially unable to obtain counsel is still valid.

---

[16]     Rule 8(c), Fed. R. Sect. 2255 Proc., states as follows:

If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.  The judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare.  These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

See, e.g., United States v. Fish, 03-20137-01-KHV, 2007 WL 2900183, at *5 (D. Kan. Oct. 4, 2007). The Court therefore will appoint counsel to represent defendant at the evidentiary hearing.

## II.    Destruction Of Evidence

Defendant claims that the United States violated his constitutional rights by destroying the marijuana plants and/or not keeping a physical record which showed how agents counted the plants. See Defendant's Memorandum at 37-44.  Specifically, defendant alleges that the destruction of evidence violated his Fifth Amendment due process rights and Sixth Amendment right to a fair trial. See id. at 37.  Defendant did not raise this claim on direct appeal.  He is therefore barred from raising it here unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or that a fundamental miscarriage of justice will occur if the Court does not address his claim.  See Allen, 16 F.3d at 378.

Defendant claims that trial counsel was ineffective in not raising this claim.  See Section 2255 Motion (Doc. #111) at 8; Defendant's Memorandum at 20-21.[17]  Defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment.  See Murray, 477 U.S. at 488; Cook, 45 F.3d at 392.  Accordingly, the Court will consider his destruction of evidence claim in context of one for ineffective assistance of counsel.  To satisfy Strickland, defendant must show (1) that counsel performed deficiently by not arguing that the government violated his constitutional rights by destroying the marijuana plants; and (2) a reasonable probability that if counsel had raised the issue, the result of the proceeding would

---

[17]    Defendant argues that trial counsel was ineffective in not moving for a new trial based on destruction of evidence.  See Defendant's Memorandum at 21.  Because defendant appears pro se, the Court construes his argument broadly to include counsel's failure to raise the issue at trial.  See, e.g., Young v. State Gov. of Okla., No. 03-2180, 98 Fed. Appx. 760, 761 (10th Cir. April 27, 2004); United States v. Lopez, 100 F.3d 113, 119 n.5 (10th Cir. 1996).

have been different.  See Strickland, 466 U.S. at 687.

With respect to destruction of evidence, defendant asserts the following facts.  On May 5, 2003, government agents searched his home and seized 99 marijuana plants.  See Defendant's Memorandum at 38-39.  The same day, defendant admitted that the plants belonged to him.  Id. at 38. Eighteen days later, on May 23, 2003, the agents destroyed the plants without keeping a physical documentation of the number of plants.  Id. at 38-39.  Prior to destroying the plants, agents did not contact defendant to allow him or his representative to witness the counting or otherwise document the number of plants.  On September 18, 2003, the grand jury indicted defendant with knowingly and intentionally possessing with intent to distribute 100 or more marijuana plants.

In California v. Trombetta, 467 U.S. 479 (1984), the United States Supreme Court ruled that the government violates a defendant's right to due process if (1) it destroys evidence whose exculpatory significance is apparent before destruction and (2) defendant is unable to obtain comparable evidence by other reasonably available means.  See id. at 489.  In Arizona v. Youngblood, 488 U.S. 51 (1988), the Supreme Court extended Trombetta to cases where the exculpatory value of evidence is indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense.  In such cases, to prove a constitutional violation, defendant must show that law enforcement acted in bad faith in destroying the evidence.  See id. at 58.

Here, the record contains no evidence regarding whether the marijuana plants had apparent exculpatory significance at the time law enforcement officers destroyed them or whether officers acted in good faith.[18]  Defendant asserts that he had only 99 marijuana plants.  Agents testified that

---

[18]    Regarding destruction of evidence, the government argues only that the claim is procedurally barred; it does not address the merits of the claim.  See Government's Response
(continued...)

they counted 101 plants – only one plant more than the 100 minimum necessary for a conviction. Because defendant was in the process of cloning the plants, a key issue is whether cuttings had developed a root system sufficient to qualify as a plant under Section 841(a)(1). Defendant contends that law enforcement destroyed the plants knowing that it was a very close case regarding quantity and knowing that they did not keep physical documentation regarding number of plants. On this record, the Court cannot conclude as a matter of law that (1) counsel acted reasonably in not arguing that the destruction of evidence violated defendant's constitutional rights, or (2) the result of the proceeding would remain unchanged had counsel made such an argument. An evidentiary hearing is necessary to determine (1) whether counsel acted reasonably in not arguing that the government's destruction of evidence violated defendant's constitutional rights; and (2) whether a reasonable probability exists that the outcome would have been different if counsel had raised such argument. See, e.g., Cannon, 383 F.3d at 1172; see also Johnson, 995 F. Supp. at 1265.

Additionally, defendant claims that he is actually innocent because he possessed only 99 marijuana plants. To determine if this is an extraordinary case which resulted in a fundamental miscarriage of justice, the Court considers whether (1) a constitutional violation (2) had a probable effect on the jury's determination and (3) resulted in conviction of an innocent man. See United States v. Thornbrugh, No. 98-5146, 1999 WL 716885, at *2 (10th Cir. Sept. 15, 1999) (quoting Parks v. Reynolds, 958 F.2d 989, 995 (10th Cir. 1992)). To satisfy this standard, defendant must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at

---

[18](...continued)
(Doc. #113) at 8.

trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Fundamental miscarriages of justice are "extremely rare." <u>Id.</u> Defendant bears the burden to present new evidence so persuasive that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt. <u>See</u> <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006).

Defendant contends that his own testimony – which was not presented at trial due to alleged ineffective assistance of counsel – would establish that he possessed only 99 plants and that the government destroyed exculpatory evidence. Defendant alleges specific and particularized facts which, if true, would entitle him to relief and the motion, files and record of the case do not conclusively show that he is entitled to no relief. Accordingly, an evidentiary hearing is necessary to determine whether defendant can prove actual innocence.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody</u> (Doc. #111) filed July 10, 2008 be and hereby is **OVERRULED in part. On June 5, 2009 at 1:30 p.m.,** the Court will hold an evidentiary hearing regarding the issues outlined above. Defendant's motion is otherwise overruled.

**IT IS FURTHER ORDERED** that <u>Petitioner's Motion For Leave To Amend Original Section 2255 Pleading</u> (Doc. #120) filed November 18, 2008 be and hereby is **SUSTAINED.**

Dated this 8th day of May, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge